1

2

3

4

5

6

7

8

9             UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12    NICHOLAS PATRICK,                    CASE NO. 1:15-cv-01790-LJO-MJS  (PC)

13                 Plaintiff,              **ORDER DISMISSING SECOND
                                           AMENDED COMPLAINT WITH LEAVE TO**
14        v.                               **AMEND**

15    REYES, et al.,                       **(ECF NO. 19)**

16                 Defendants.             **AMENDED  COMPLAINT  DUE  WITHIN
                                           THIRTY (30) DAYS**
17

18

19

20

21        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

22    rights action brought pursuant to 42 U.S.C. § 1983.

23        Plaintiff filed a first amended complaint before his initial complaint was screened.

24    (ECF No. 15.) His complaint and first amended complaint were dismissed with leave to

25    amend on the ground that neither was complete in itself. (ECF No. 17.) His second

26    amended complaint is before the Court for screening.

27

28

## I.    Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III.    Plaintiff's Allegations

Plaintiff is incarcerated at California Substance Abuse Treatment Facility, but complains of acts that occurred at Wasco State Prison. He names the following Correctional Officers ("CO") as defendants: Reynaga, Ziegler, Hurd, Mauldonado, Hernandez, Petroff, Dominguez, Rios, Morales, Solis, and Buttran.

His allegations may be summarized essentially as follows:

### A.    Background

Plaintiff was arrested on July 7, 2014 and was detained at the Orange County Jail. Plaintiff believes that the "harassment" he experienced at Wasco State Prison was part of a chain of events and harassment that began at the jail. Thus, although the events occurring at the jail are not the subject of the instant action,[1] Plaintiff describes such events in some detail. Although difficult to dicipher, they appear to allege that he had difficulty learning of his court appearance dates and also had two cases improperly "combined" in retaliation for Plaintiff refusing a plea deal. He also was required to sign false inmate trust documents.

### B.    Library Access

Plaintiff was transferred to Wasco State Prison on August 5, 2015. On August 14, 2015, Plaintiff sent a request to the library for priority library user ("PLU") status. Plaintiff had an August 26, 2015 deadline to file a notice of appeal in Case No. 14Wf2607.[2] On August 21, 2015, Plaintiff received a PLU form to complete. He completed and sent in the form listing his two case numbers, 14Wf2607 and 14Wf2141, and indicated he had an August 26, 2015 court deadline.

On August 27, 2015, Officer Reynaga delivered the "unanswered" PLU form. By this time, Plaintiff's court deadline had passed. Plaintiff was denied law library access.

---

[1] Plaintiff states that the events at the jail are the subject of a separate suit in the United States District Court for the Central District of California.
[2] Although not expressly stated, this appears to be the state court proceeding leading to Plaintiff's incarceration.

3

On August 28, 2015, Plaintiff attempted to re-submit the form. When Plaintiff attempted to place an envelope with the form in the mailbox, Officer Reynaga said, "Let me see the envelope." Reynaga crossed out Plaintiff's name on the envelope and told Plaintiff he was "good to go." Plaintiff then inserted the envelope in the mailbox.

By September 2, 2015, Plaintiff had not received a response. He mailed a request for interview to "the sergeant" asking for law library time.

On September 9, 2015, Plaintiff received a copy of his PLU request form. The form indicated it was received by non-party "Ms. Landcaster" on September 4, 2015.

**C.    Mail Handling**

On September 9, 2015, Plaintiff attended the law library. He requested a notice of appeal form for Case No. 14Wf2141, which had a September 30, 2015 deadline. Later that evening, Plaintiff approached non-party CO Honeyman with four envelopes. One was addressed to the Orange County Superior Court and contained his notice of appeal in Case No. 14Wf2141. The other three contained letters and supporting documents to the ACLU regarding the difficulties Plaintiff had at Orange County Jail. Honeyman sealed and signed the envelopes as confidential correspondence. Officer Hernandez witnessed the signing and the emptying of the mailbox at the end of third watch. Plaintiff received no response from the courthouse or the ACLU.

On October 17, 2015, CO Rios collected an unsealed letter to the ACLU from Plaintiff's door.

On November 2, 2015, Plaintiff asked CO Petroff to sign and seal a letter to Plaintiff's appellate attorney. Petroff pretended to sign it. On November 10, 2015, CO Hurd returned the envelope to Plaintiff, but the envelope did not have Petroff's signature. Hurd instructed Plaintiff to unseal the envelope and to put the contents in a new envelope. Plaintiff complied.

4

On November 18, 2015, COs Rios and Petroff signed and sealed as "confidential correspondence" three letters from Plaintiff to attorneys. The letters sought representation in civil rights actions.

On November 22, 2015, CO Petroff signed and sealed as confidential correspondence a letter to the ACLU.

On December 6, 2015, Plaintiff asked CO Petroff to sign two letters as confidential correspondence – a letter to an attorney and a letter to the ACLU. Petroff stated, "Don't worry, it will go out."

Plaintiff received no response to any of this correspondence. Plaintiff also alleges that, on various other occasions, various officers refused to sign Plaintiff's letters as confidential correspondence.

### D.    Grievances

Plaintiff filed several grievances regarding a number of unrelated issues: an alleged "Hispanic workers only" policy; small food portions; mishandling of mail; denial of extra Kool-Aid; being required to get his own milk and bananas instead of having it available on the table; and the like. These appeals were cancelled, rejected, or otherwise improperly handled. Various officers refused to seal and sign the grievances as "confidential correspondence."

### E.    Discrimination

Plaintiff alleges he was discriminated against on the basis of his single cell status, his race, his last name, and for having a large penis. He provides a lengthy list of the slights he endured as a result of this discrimination: poor TV viewing area, mishandling of laundry, being denied an "Angel Tree" application for Christmas gifts, not receiving a canteen order form, cold food, lack of coffee, and the like.

### F.    Relief Sought

Plaintiff seeks various forms of injunctive relief, and compensatory and punitive damages.

1  **IV.    Analysis**

2      **A.    Unrelated Claims**

3          Plaintiff is raising numerous claims against different defendants based on different

4  events occurring at different times. Plaintiff may not bring unrelated claims against

5  unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley,

6  653 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

7  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out

8  of the same transaction or occurrence, or series of transactions and occurrences, and

9  (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v.

10  Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of

11  North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly

12  joined under Rule 20(a) will the Court review the other claims to determine if they may

13  be joined under Rule 18(a), which permits the joinder of multiple claims against the same

14  party.

15          Plaintiff fails to comply with the rules regarding joinder of claims. For example,

16  Plaintiff appears to be pursuing claims against certain defendants for interference with

17  his mail while simultaneously pursuing claims against other defendants for

18  discrimination, and against still others for improper handling of grievances. Plaintiff may

19  not pursue unrelated claims against unrelated defendants in this action. If Plaintiff elects

20  to amend his complaint, Plaintiff must choose which claims he wishes to pursue in this

21  action. If Plaintiff again sets forth unrelated claims which violate joinder rules, the Court

22  may dismiss this action for failure to comply with Court orders.

23          The Court will set forth below the legal standards applicable to what appear to be

24  Plaintiff's intended claims.

25      **B.    Linkage**

26          Under § 1983, Plaintiff must demonstrate that each named defendant personally

27  participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons

28

1   v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton,

2   588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

3   2002). "A person subjects another to the deprivation of a constitutional right, within the

4   meaning of section 1983, if he does an affirmative act, participates in another's

5   affirmative acts, or omits to perform an act which he is legally required to do that causes

6   the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

7   Cir. 1978).

8         Liability may not be imposed on supervisory personnel under the theory of

9   respondeat superior, as each defendant is only liable for his or her own misconduct.

10   Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable

11   if they "participated in or directed the violations, or knew of the violations and failed to act

12   to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v.

13   Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570

14   (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th

15   Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

16        **C.    Access to Courts**

17         Inmates have a fundamental right of access to the courts.  Lewis v. Casey, 518

18   U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions,

19   and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise

20   from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-

21   looking access claim) or from the loss of a meritorious suit that cannot now be tried

22   (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). A

23   plaintiff must show that he suffered an "actual injury" by being shut out of court. Lewis,

24   518 U.S. at 350-51. An "actual injury" is one that hinders the plaintiff's ability to pursue a

25   legal claim. Id. at 351.

26

27

28

1

### D.   Interference with Mail

2

Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v.</u>

3 <u>Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, there must be a "delicate

4 balance" between prisoners' First Amendment rights and the discretion given to prison

5 administrators to govern the order and security of the prison.  <u>Thornburgh v. Abbott</u>, 490

6 U.S. 401, 407-408 (1989).

7

A prison may adopt regulations or practices for incoming mail which impinge on a

8 prisoner's First Amendment rights as long as the regulations are "reasonably related to

9 legitimate penological interests."  <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Thornburgh</u>,

10 490 U.S. at 413. Because outgoing correspondence from prisoners does not generally

11 pose a serious threat to internal prison order and security, there must be a closer fit

12 between any regulation or practice affecting such correspondence and the purpose it

13 purports to serve. <u>Thornburgh</u>, 490 U.S. at 411-12. Censorship of outgoing prisoner mail

14 is justified if the following criteria are met:  (1) the regulation furthers "an important or

15 substantial government interest unrelated to the suppression of expression" and (2) "the

16 limitation on First Amendment freedoms must be no greater than is necessary or

17 essential to the protection of the particular governmental interest involved." <u>Procunier v.</u>

18 <u>Martinez</u>, 416 U.S. 396, 413 (1974), <u>overturned on other grounds by</u> <u>Thornburgh</u>, 490

19 U.S. at 413-14.

20

### E.   Grievance Process

21

Plaintiff does not a have protected liberty interest in the processing his appeals,

22 and therefore, he cannot pursue a claim for denial of due process with respect to the

23 handling or resolution of his appeals. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir.

24 2003) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988)).

25

### F.   Equal Protection

26

The Equal Protection Clause requires that persons who are similarly situated be

27 treated alike. <u>City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439

28

(1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

### G.    Cruel and Unusual Punishment

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A conditions of confinement claim has both an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Id.  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9. Second, the prison official must have acted with "deliberate indifference" to a substantial risk of serious harm to the inmate. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### H.    Injunctive Relief

Plaintiff requests injunctive relief. However, this request appears to be moot because Plaintiff is no longer incarcerated at Wasco State Prison, and nothing in the complaint indicates he will be transferred back there. See Preiser v. Newkirk, 422 U.S.

395, 402-03 (1975); <u>Johnson v. Moore</u>, 948 F.2d 517, 519 (9th Cir. 1991); <u>see also</u> <u>Andrews v. Cervantes</u>, 493 F.3d 1047, 1053 n. 5 (9th Cir. 2007).

## V.    Conclusion and Order

Plaintiff's second amended complaint improperly joins unrelated claims against multiple defendants. Accordingly, the second amended complaint will be dismissed with leave to amend. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1.  Plaintiff's second amended complaint is dismissed for improper joinder of claims;

2.  The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his second amended complaint, filed January 15, 2016;

3. Within thirty (30) days from the date of service of this order, Plaintiff must file a third amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action will be dismissed, with prejudice, for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   August 1, 2016                    /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

11